## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| Isabelle Karp, Individually and as Personal Representative of the Estate of Richard Raymond Karp, | Case No. 2:24-cv-03169-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| United States of America, | |
| Defendant. | |

Before the Court is the Government's second motion to dismiss or, in the alternative, a motion for summary judgment. (Dkt. No. 29). Plaintiff has filed a response in opposition and the Government has filed a reply. (Dkt. Nos. 34, 36). For reasons set forth below, the Government's motion is denied.

## I.    Background

Plaintiff, individually and as Personal Representative of the Estate of Richard Karp, brings wrongful death, survival, and loss of consortium claims under the Federal Tort Claims Act ("FTCA") against the United States arising from the alleged negligent medical care rendered to Mr. Karp by the Department of Veterans Affairs ("VA") at the Ralph H. Johnson VA Medical Center. *See generally* (Dkt. No. 1). Mr. Karp was diagnosed with ulcerative colitis in 1992 and underwent a series of colonoscopies to monitor his condition, which presented a threat of developing colon cancer. (*Id.* ¶¶ 8-9). Despite a series of colonoscopies that signaled the presence of potentially cancerous polyps, Plaintiff alleges that Mr. Karp's medical care team at the VA and the Medical University of South Carolina ("MUSC"), where he was referred for certain procedures by the VA, failed to inform him of the seriousness of his condition or his need for surgery. (*Id.* ¶¶ 16-44). By the time Plaintiff was diagnosed with colorectal cancer on June 21, 2021, it had

1

metastasized to his bones, liver, lymph nodes and chest. (*Id.* ¶ 50). Mr. Karp passed away on June 26, 2021—just five days after his initial cancer diagnosis. (*Id.* ¶ 55). Plaintiff seeks damages from the United States for the alleged negligence of the VA, and separately pursues her claims against MUSC in state court. *See Karp v. MUSC et al.*, Civ. Action No. 2023-CP-10-0300 (June 20, 2023).

The Government's motion is based on its contention that Plaintiff's complaint was filed outside the six-month statute of limitations period for filing a complaint after notice of disallowance was allegedly provided by the VA in a letter dated October 25, 2023, and received by Plaintiff's attorneys on October 31, 2023. (Dkt. No. 29 at 2). The Government argues that when Plaintiff filed her complaint on May 22, 2024, she was twenty-seven days beyond the filing deadline under the FTCA. Plaintiff opposes the motion, arguing that neither she nor her attorneys received any notice of disallowance from the Government and that, in turn, she timely filed her complaint.

It is important at the outset to set forth the statutory scheme under the Federal Tort Claims Act for when a plaintiff is authorized to file suit against the United States. A party is initially required to file an administrative claim with the applicable administrative agency. The agency may issue a denial letter within six months of receipt of the administrative claim. If the Government fails to issue a denial letter within six months, the plaintiff can deem the failure to timely respond as a denial of the claim and the plaintiff then has six months to file suit. 28 U.S.C. § 2675(a). Plaintiff asserts that the Government "often" does not issue a denial letter within the six-month window. According to Plaintiff, when her attorneys did not receive a denial letter from the VA within six months, they were not surprised and proceeded to file the complaint within six months from the date of the deemed denial. (Dkt. No. 34 at 5).

The Government points in its motion to certain documentary evidence which it argues provides "overwhelming" evidence that Plaintiff's counsel received the notice of disallowance from the VA on October 31, 2023.   The Government's evidence includes the following:

1. Jennifer Hansen, Deputy General Counsel of the VA, stated in an affidavit that she "signed a denial letter" and it was mailed on October 25, 2023. (Dkt. No. 29-1 at 2).

2. A Microsoft Word version of the denial letter was attached to Ms. Hansen's affidavit. The letter references a Certified Mail number, 7020 0640 0000 6789 8201. (*Id*. at 3).

3. Brian Waters, a United States Postal Service (USPS) manager in South Carolina, provided an affidavit explaining the use of USPS Mobile Delivery Devices (MDDs) to track and document letters through the USPS system.   As Mr. Waters explained, a letter carrier who delivers certified mail utilizing the MDDs process scans the envelop with the device and then has the recipient electronically acknowledge receipt. *See* (Dkt. No. 29-2 at 2).  Mr. Waters further stated that USPS digital records documented that a certified letter, with tracking number 7020 0640 0000 6789 8201, was delivered on October 31, 2023, to the law office of Plaintiff's attorneys at 1517 Hampton Street, Columbia, South Carolina.  *See* (*id*. at 2).

4. Ms. Amanda Castro, then the front desk receptionist for Plaintiff's law firm, acknowledged that it is her electronic signature on the USPS digital records confirming receipt of the envelope with tracking number 7020 0640 0000 6789 8201. (Dkt. No. 29-3 at 18).  She further testified that the mail carrier had to be allowed to enter through the law firm's locked front door to obtain access to her at the receptionist's desk. (*Id.* at 3, 8).

Plaintiff's counsel contests the Government's argument that a VA denial letter was delivered on October 31, 2023, to their office and that the first information they received about the alleged denial letter was provided by Government counsel on August 29, 2024. (Dkt. No. 34 at 8). Plaintiff makes the following points challenging the Government's evidence of delivery of the denial letter:

1. The Government has allegedly never produced a copy of the actual letter sent and has produced only a Microsoft Word version of the document. (*Id*. at 11).

2. Ms. Hansen stated in her affidavit that she signed the denial letter on October 25, 2023, but the only copy produced contains her embedded electronic signature. (*Id.*).

3. Plaintiff has attempted to depose Ms. Hansen to obtain more detailed information about her role in the denial of the claim, the execution of the letter, the persons involved in the denial of the claim, and the routine processes of the VA Legal Counsel's office regarding the denial of claims.  The Government, per the Plaintiff, has refused to make Ms. Hansen available to be deposed and has not responded to Plaintiff's interrogatories related to these issues.  Plaintiff argues that the Hansen affidavit "provides no detail about who actually drafted the Purported Denial Letter, who allegedly printed it, who allegedly placed it in an envelope, who allegedly sealed it, and who allegedly placed it in the mail." (*Id*. at 11-12).  Plaintiff further sought unsuccessfully from the Government in discovery information on "whether denial letters are prepared individually as needed or in bulk, and what procedures are followed to ensure the correct document is mailed." (*Id*. at 12).

4. The Government elected to use the less expensive certified mail option with only electronic tracking and digital signature, and did not utilize the more costly certified

mail with return receipt requested—the familiar "green card" attached to the envelope. Plaintiff argues that this "cost-cutting measure left the Government unable to produce the green card establishing the Purported Denial Letter was what was delivered and handed to someone at Plaintiff's counsel's law firm." (*Id*. at 10). Further, given the Government's use of the electronic tracking system *only* (without the green card), the recipient (in this case, the law firm) was provided no receipt confirming delivery. (Dkt. No. 10-5 at 1).

5. The Government has failed to identify the USPS letter carrier who allegedly delivered the letter, which Plaintiff describes as "the most critical fact witness." (Dkt. No. 34 at 17). Plaintiff argues that the only witness offered by the Government is a USPS manager who had no personal involvement in the delivery of the challenged letter.

6. Plaintiff offered a sworn statement from the receptionist, Ms. Castro, indicating that USPS mail carriers would hand her an "unsorted bundle of mail—regular intermixed with certified pieces—and ask her to sign an electronic device multiple times for the pieces of certified mail supposedly in the bundle." (Dkt. No. 10-5 at 1; Dkt. No. 34 at 22).

7. Law firm staff indicate that they have experience in processing legal mail, appreciate the importance and time sensitivity of a denial letter, and follow a well-established protocol for the routine processing of mail. This includes the receptionist promptly forwarding any case specific mail to the paralegal assigned to the case, who then brings the correspondence to the attention of the attorney assigned the case and scans the letter into the electronic case file. The correspondence is also placed in the physical file of the client. (Dkt. No. 10-4 at 4-6; Dkt. No. 10-5 at 1). Law firm staff stated that the

internal mail distribution system within the law firm was highly reliable with no prior instances where mail was misplaced. (Dkt. No. 10-4 at 6; Dkt. No. 10-5 at 3). Further, law firm staff represent that they thoroughly searched the law firm's physical and digital records and have found no evidence of the receipt of a denial letter from the VA regarding Plaintiff's claim. (Dkt. No. 10-2 at 2; Dkt. No. 10-4 at 5; Dkt. No. 34 at 20-23).

8. Law firm staff reported regular problems with USPS mis-delivery of mail, including receipt of the mail of others and the delivery of law firm mail to others. (Dkt. No. 10-4 at 6-7). Ms. Castro also reported that postal employees who delivered mail to the law firm "regularly expressed frustration with time pressures related to the size of their route and volume of mail to be delivered. Interaction with the postal carrier and signing for mail was a very hurried process in which I was not given the opportunity to compare the tracking number to a particular piece of mail." (Dkt. No. 10-5 at 3).

## II.     Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby,s Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that

2:24-cv-03169-RMG     Date Filed 09/24/25     Entry Number 39     Page 7 of 10

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from

those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am.*

*Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of

demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-

moving part must demonstrate specific, material facts exist that give rise to a genuine issue to

survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or

speculative allegations do not suffice, nor does a 'mere scintilla of evidence' " in support of the

non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.

2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).[1]

## III.    Discussion

A summary of the disputed facts set forth above plainly shows that there are genuine

disputes of material facts related to whether the VA's letter was delivered to the office of Plaintiff's

law firm.  The disputed facts are obviously material because the issue of whether or not the denial

letter was received by the Plaintiff's law firm on or about October 31, 2023, will likely be outcome

determinative of whether the Plaintiff's complaint was timely filed.

---

[1] The Government moved to dismiss or, in the alternative, for summary judgment. (Dkt. No. 29).
The Court previously denied the Government's motion to dismiss on the very same issue now
before the Court. (Dkt. No. 16).  Consequently, the Court finds the appropriate motion before the
Court is a motion for summary judgment, although the Court's conclusion would be the same if it
was ruling upon a second motion to dismiss.

The Government argues that its only obligation is to place the denial letter in the United States mail, and it is of no consequence whether the denial letter was *actually* received by the plaintiff. (Dkt. No. 29 at 2; Dkt. No. 36 at 4). It is well settled that the filing deadlines under the Federal Tort Claims Act are non-jurisdictional and are subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015). As an equitable doctrine, there must be flexibility "to meet [] situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices." *Holland v. Florida*, 560 U.S. 631, 650 (2010) (*citing Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)). Where a party asserts equitable tolling, she must show she was pursing her rights diligently and some extraordinary circumstance prevented timely filing. *Id.* at 649. The Fourth Circuit equitably tolled the six-month statute for filing suit under the Federal Tort Claims Act where the administrative agency's denial letter failed to provide notice of the deadline for filing suit, as required by federal regulation. *Barrett v. United States*, 851 F.2d 356 (4th Cir. 1988) (Table). Under these standards, the failure of the plaintiff to receive the denial letter would certainly require a careful consideration of equitable tolling.

The Government further argues that the plaintiff was not diligent because her attorneys failed to reach out to the Government after they did not receive a denial letter within six months of the submission of Plaintiff's administrative claim. (Dkt. No. 36 at 2). Plaintiff, for her part, asserts that it is common that the Government does not issue a denial letter within six months of the filing of the administrative claim. (Dkt. No. 34 at 5).

The statute actually anticipates that the Government may not issue a denial letter within six months of the submission of the administrative claim. Under these circumstances, the plaintiff (at her option) may deem the claim denied and then has six months to file suit. 28 U.S.C. § 2675(a). There is no requirement under the statute for a plaintiff to check in with the Government if the

Government fails to issue a denial letter within the six-month period following submission of the administrative claim.

The undisputed facts here show that Plaintiff filed suit on May 22, 2024, within six months after the "deemed" date of denial, December 26, 2023.[2]  Based upon the record before the Court, if Plaintiff can establish by a preponderance of the evidence that she did not receive the VA denial letter until after suit was filed in this case, her case would likely not be barred under the statute of limitations.

The critical, materially disputed issue is whether Plaintiff actually received the VA denial letter on or about October 31, 2023.  The Government relies on its own internal procedures and the procedures of the United States Postal Service to support its argument that the denial letter was received by Plaintiff's attorneys.  Plaintiff relies on the internal procedures of her law firm to support her argument that no denial letter was received at the law firm's office.  But all systems involved in this dispute involve human activity and, with that, the potential for human error. Indeed, there was obviously an error here where one of the systems at issue failed.  If this case is not disposed of pretrial on the medical malpractice related issues, it will likely be necessary for the Court to hear from all relevant witnesses and to review all relevant documents at trial and to make findings of fact concerning the delivery or non-delivery of the VA denial letter.

---

[2] The Government cites *Espinoza v. United States*, 2014 WL 7013999, (M.D. Pa. Dec. 11, 2014) for the proposition that a plaintiff did not exercise diligence when he did not investigate the disposition of his claim allegedly after not receiving a denial letter. (Dkt. No. 29 at 16).  This case is factually distinguishable from Plaintiff's case.  The plaintiff in *Espinoza* did not file suit within the six-month period after the "deemed" date of denial and actually filed suit 18 months after submitting the administrative claim and nearly one year after the "deemed" denial date. *Espinoza*, 2014 WL 7013999, at *1.

In ruling upon a party's motion for summary judgment, the Court is obligated to construe all ambiguities and inferences in favor of the nonmoving party. In this situation, many questions have been left unanswered, a situation caused at least in part by the Government's lack of compliance with its discovery obligations and the discovery orders of this Court. All parties have the right to conduct full, robust discovery on every aspect of the preparation, execution, mailing and delivery of the disputed letter. Without first obtaining a protective order, the Government had no right to unilaterally refuse to respond to Plaintiff's discovery requests or to withhold making witnesses with relevant information available for depositions. This includes discovery on both the statute of limitations issue as well as the underlying claims of medical malpractice asserted by Plaintiff. The Court expects all parties to comply fully with their discovery obligations.

IV.     **Conclusion**

Considering the foregoing, the Government's Motion for Summary Judgment (Dkt. No. 29) is **DENIED**.

**AND IT IS SO ORDERED.**


  s/ Richard Mark Gergel____
Richard Mark Gergel
United States District Judge

September 24, 2025
Charleston, South Carolina